```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MICHELLE MCJUNKIN,

                        Plaintiff,

          -against-                          MEMORANDUM & ORDER
                                             13-CV-5045(JS)(WDW)
SUFFOLK COUNTY CIVIL SERVICE,

                        Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Michelle McJunkin, pro se
                    P.O. Box 575
                    Yaphank, NY 11980

For Defendant:      Richard H. Wienschenk, Esq.
                    Suffolk County Attorney's Office
                    H Lee Dennison Building
                    Hauppaugue, NY 11788
```

SEYBERT, District Judge:

Pro se plaintiff Michelle McJunkin ("Plaintiff") commenced this action on September 5, 2013 against defendant Suffolk County Civil Service ("Defendant") asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1983. Currently pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint. For the following reasons, Defendant's motion is GRANTED.

BACKGROUND[1]

I. General Background

Plaintiff, an African-American woman, worked for Defendant from 2004 until she was laid off on May 14, 2012. (Compl. at 3-5[2]). The Complaint includes several allegations about Plaintiff's work conditions while employed with Defendant. (Compl. at 5-8.) Among other things, Plaintiff alleges that Defendant failed to promote her, that she was subject to numerous false accusations, and that the terms and conditions of her employment were unequal. (Compl. at 5-8.)

Plaintiff alleges that Jim Ingenito, her Department Head, and Keith Larsen, a former Supervisor, made several false accusations about her. (Compl. at 6-8.) Specifically, she alleges that Ingenito, at different times, falsely accused Plaintiff of "not following his directives," improperly using Microsoft Outlook, not doing her work, and harassment. (Compl. at 6-7.) Plaintiff further alleges that Larsen "fed [the] current Department Head mis-information [sic] about [her] to discredit [her] credentials, assassinate [her] character and to begin to formulate a trail of reasons as to why [she] should not

---

[1] The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order. The Complaint does not appear to allege the facts in any chronological order and is, at times, difficult to decipher.

[2] Page numbers refer to those provided by the Electronic Case Filing system.

work [there]."  (Compl. at 7.)  According to Plaintiff, Larsen also falsely accused her of "out-sourcing" work and "intentionally going against contractual agreements."[3]  (Comp. at 7.)  Plaintiff asserts that she received "[h]arsh punishment" for such charges including loss of wages, vacation, and sick time.  (Compl. at 6.)

In addition to the false accusations, Plaintiff describes numerous instances in which she believes that she was treated unfairly in comparison to other employees.  For example, according to Plaintiff, Gilbert Anderson and Jim Peterman "[r]efused to restore [her] work station equal to that of [her] co-working peers" by removing her computer.  (Compl. at 5.)  In addition, Plaintiff maintains that she was not allowed to "automate and/or improve on [her] system" while other employees were.  (Compl. at 7-8.)  Finally, Plaintiff claims that she was treated unfairly because she was laid off earlier than other employees that were on the same layoff list as her.  (Compl. at 5.)  As a result, Plaintiff claims that those employees who were laid off later had the months of May and June to take advantage of "the resource center" and attend informational seminars at

---

[3] Plaintiff also claims that Jim Peterman "[r]efused to review [her] response to reprimands and charges against [her]" after she informed him that she was not guilty of such charges. (Compl. at 6.)  However, it is unclear whether Plaintiff's discussion with Peterman was regarding the accusations made by Ingenito and Larsen, or some other reprimands and charges against her.

3

the Department of Labor, while she only had one week's notice of those opportunities. (Compl. at 5.)

Plaintiff also alleges that Defendant deliberately refused her the opportunity to advance. (Compl. at 5.) Plaintiff was never given an exam that would have allowed her to become a permanent employee and Larsen refused to allow Plaintiff to upgrade to the next position. (Compl. at 5-8.)

Finally, Plaintiff alleges that she was required to attend an "unofficial meeting" with Ingenito and others. (Compl. at 7.) At this meeting, Plaintiff was told that she was not allowed to speak unless asked a question and then was dismissed when she disagreed with what was said about her. (Compl. at 7.)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 8, 2013. (Compl. at 4.) The EEOC dismissed her complaint on June 6, 2013. (Comp. at 10.)

## DISCUSSION

Defendant moves to dismiss the Complaint, arguing that Plaintiff has failed to sufficiently allege discrimination or retaliation under Title VII or a First Amendment claim. (See Def.'s Br., Docket Entry 7-3.) The Court will first address the applicable standard of review before turning to Defendant's motion more specifically.

4

I. Standard of Review

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

II. Suffolk County Civil Service as a Defendant

Initially, the Court notes that Defendant is correct that Plaintiff did not bring suit against a suable entity.

Agencies of municipalities, such as the Suffolk County Civil Service, are not capable of being sued in New York. Omnipoint Commc'ns, Inc. v. Town of LaGarange, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009); Human Res. Research & Mgmt. Grp., Inc. v. Cnty. of Suffolk, 687 F. Supp. 2d 237, 240 n.1 (E.D.N.Y.

5

2010) (holding that only Suffolk County was a proper defendant in an action that also named as defendants the Suffolk County Department of Social Services and the Suffolk County Department of Health Services). "Under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued." Omnipoint Commc'ns, Inc., 658 F. Supp. 2d at 552 (internal quotation marks and citations omitted). Rather, "[t]he only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which the municipality acted." Id.

Assuming, though, that Plaintiff could substitute a proper party, the Court turns to the merits of Defendant's motion.

III. Plaintiff's Title VII Discrimination Claim

Defendant asserts that Plaintiff has failed to state a Title VII discrimination claim. (Def.'s Br. at 3.) The Court agrees.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To

6

establish a prima facie case of discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

The Supreme Court has held, however, that a plaintiff need not plead the elements of a prima facie case in his or her complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement."). Rather, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "giv[ing] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 512 (quoting FED. R. CIV. P. 8(a)(2)); Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (internal quotation marks omitted).

Thus, reconciling Swierkiewicz with the standards set out in Iqbal and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007), although "a complaint need not establish a prima facie case of employment discrimination to

7

survive a motion to dismiss . . . , the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (internal quotation marks and citation omitted); accord King v. U.S. Sec. Assocs., Inc., No. 11-CV-4457, 2012 WL 4122025, at *4 (S.D.N.Y. Aug. 22, 2012), adopted by 2012 WL 4327396 (S.D.N.Y. Sept. 18, 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; accord Turkman v. Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009). "For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a prima facie case." King, 2012 WL 4122025, at *5 (collecting cases).

While pro se plaintiffs enjoy a somewhat more liberal pleading standard, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citation omitted)), they must still comport with the procedural and substantive rules of law, see Colo. Capital v. Owens, 227 F.R.D. 181, 186 (E.D.N.Y. 2005).

Here, even assuming that Plaintiff has adequately alleged that she is a member of a protected class, that she was qualified for the job, and that she suffered an adverse employment action in the form of termination, she has not adequately alleged that any adverse action took place under circumstances giving rise to an inference of discrimination. Other than alleging her race, color, and gender generally, Plaintiff alleges no facts actually connecting these qualities to Defendant's actions. In fact, she alleges just the opposite--asserting on numerous occasions that Defendant's employees' actions were motivated by "personal ill feelings" and certain "disciplinary actions." (Compl. at 5.) Such allegations are insufficient to state a claim. See Clark v. Roslyn Union Sch. Dist., No. 11-CV-2957, 2012 WL 2916759, at *6 (E.D.N.Y. July 17, 2012) (finding a plaintiff's pro se complaint insufficient where it failed to allege the adverse employment actions endured by the plaintiff were because of her "race, color, religion, sex, or national origin"); Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) ("Even liberally construed, plaintiffs' complaint fails to allege any facts relating to race, other than a conclusory statement that defendants retaliated and discriminated against plaintiffs based on their being African-American, which is insufficient under Iqbal.").

9

Accordingly, Defendant's motion to dismiss Plaintiff's Title VII discrimination claim is GRANTED.

IV. Plaintiff's Title VII Retaliation Claim

Defendant also moves to dismiss Plaintiff's Title VII retaliation claim, arguing that Plaintiff has again failed to state a claim. (Def.'s Br. at 5.) The Court agrees.

To state a claim for retaliation under Title VII, a plaintiff must plead facts demonstrating that: "(1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007); accord Kouakou v. Fideliscare N.Y., 920 F. Supp. 2d 391, 400 (S.D.N.Y. Dec. 17, 2012). "As with discrimination claims, however, plaintiff is not required to plead facts sufficient to establish a prima facie case of Title VII retaliation in order to survive a Rule 12(b)(6) motion to dismiss." James v. Countrywide Fin. Corp., 849 F. Supp. 2d 296, 311 (E.D.N.Y. 2012); see also Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 72 (2d Cir. 2006) ("The Swierkiewicz holding applies with equal force to any claim, including retaliation claims . . . , that the McDonnell Douglas framework covers."). Rather, Plaintiff need only provide facts that give the defendant "fair notice of what the plaintiff's claim is and the

10

grounds upon which it rests." Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998 (internal quotation marks and citation omitted).

Here, the only potential protected activity was Plaintiff's filing of the EEOC complaint on March 8, 2013. Plaintiff's last alleged contact with Defendant, however, was in May 2012, when Defendant terminated her employment. (Compl. at 5.) Thus, Plaintiff has failed to allege a causal connection. See Pinero v. Long Island State Veterans Home, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity." (citing Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001)).

Accordingly, Defendant's motion to dismiss Plaintiff's Title VII retaliation claim, to the extent she alleges one, is GRANTED.

V. Plaintiff's "Constitution Freedom of Speech" Claim

Finally, Defendant moves to dismiss Plaintiff's First Amendment claim. Although it is unclear exactly what Plaintiff intends to allege, the Court reads her allegation regarding "Constitution [sic] Freedom of Speech" to assert a First Amendment claim in connection with an "unofficial meeting" in which Plaintiff was told to "shut-up and listen." (Compl. at 3,

7.)  In any event, the Court agrees with Defendant that Plaintiff has failed to state a claim in this regard.

Plaintiff specifically alleges that Defendant required that she attend a meeting during which she "was not allowed to speak and[/]or respond with any type of comments." (Compl. at 7.)  Ingenito told Plaintiff that he did not know what to do with her. (Compl. at 7.) Suddenly, upon Plaintiff's disagreement with some comments made during the meeting, she was dismissed. (Compl. at 7.)

Plaintiff, a public employee, did not give up her First Amendment rights by virtue of her public employment. <u>Connick v. Myers</u>, 461 U.S. 138, 140 (1983); <u>Pickering v. Bd. Of Educ.</u>, 391 U.S. 563, 568 (1968). However, the Supreme Court has stated in <u>Connick</u> that "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." 461 U.S. at 146, 103 S. Ct. at 1690. The Second Circuit has read <u>Connick</u> to require public employees asserting a violation of their First Amendment right to show that their speech touches a matter of public concern. <u>See</u> <u>Cobb v. Pozzi</u>, 363 F.3d 89, 102 (2d Cir. 2004).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48, 103 S. Ct. at 1690. This public concern determination is a question of law to be decided by the court. See Gros v. Port Washington Police Dist., 944 F. Supp. 1072, 1077-78 (E.D.N.Y. 1996). If the court deems speech a matter of public concern, it must balance "the interest of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." Connick, 461 U.S. at 142, 103 S. Ct. at 1687 (internal quotation marks and citation omitted).

The subject matter of the "unofficial meeting" is not entirely clear, although the Complaint does reference an accusation that Plaintiff was not respecting Ingenito as her supervisor. (Compl. at 7.) Nonetheless, it is apparent from the face of the Complaint that the meeting was private and pertained to some disciplinary matter involving Plaintiff. See Iannillo v. Cnty. of Orange, 187 F. Supp. 2d 170, 181 (S.D.N.Y. 2002) ("The key inquiry is whether the comment was made by plaintiff in his role as a disgruntled employee or in his role as a private citizen."). Moreover, the only speech quelled during the meeting was Plaintiff's disagreement with Ingenito's

accusations. (See Compl. at 7.) Thus, the speech was not a matter of public concern. See Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993) (holding that an employee's complaint regarding sexual harassment she endured was not a matter of public concern because it was "'personal in nature and generally related to her own situation.'" (quoting Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir. 1991))).

Accordingly, Defendant's motion to dismiss Plaintiff's First Amendment claim is GRANTED.

VI. Leave to Replead

Although Plaintiff has not requested leave to replead, courts should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

Here, the Court finds leave to replead would be inappropriate. The Complaint is wholly lacking in any allegations regarding Plaintiff's race, color, or gender. Rather, allegations that Defendant's employees were motivated by

14

personal ill will and Plaintiff's disciplinary violations entirely undercut any inference of discrimination.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

The Court certifies that pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45(1962).

The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: July  10 , 2014
       Central Islip, NY